## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GLENCOE ACQUISITION, INC., et al., | ) | Case No. 12-12071(KG) |
| | ) | (Jointly Administered) |
| | ) | |
| _____Debtors._____ | ) | |
| CHARLES M. FORMAN, as the Chapter 7 | ) | |
| trustee for Glencoe Acquisition, Inc., et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 14-50464(KG) |
| | ) | |
| HBK MASTER FUND L.P., and | ) | |
| JOHN DOES No. 1 through 100, being | ) | |
| fictional names, | ) | |
| | ) | |
| Defendants. | ) | **Re: Dkt No. 5** |
| _____ | ) | |

## MEMORANDUM OPINION

HBK Master Fund L.P. ("HBK") moved to dismiss the Amended Complaint (the "Motion") which Charles M. Forman (the "Trustee") has filed as the Chapter 7 Trustee for Glencoe Acquisition, Inc. ("Glencoe"). HBK has filed the Motion pursuant to Fed. R. Civ. P. 12(b)(5) and (6), made applicable pursuant to Fed. R. Bankr. P. 7012. The reasons for the Motion are (1) the Trustee failed to serve the Amended Complaint in accordance with Rule 7004(b)(3), or (2) failed to state a claim pursuant to Fed. R. Civ . P. 12(b)(6). For the reasons which follow, the Court will deny the Motion.

## FACTS

The relevant facts, in summary, are as follows:

On March 14, 2011, Glencoe and HBK, a foreign limited partnership, entered into a Stock Purchase Agreement (the "Stock Purchase Agreement") in which HBK agreed to convey to Glencoe all of the issued and outstanding securities of HomeWise Holdings, Inc. ("Holdings") for $500,000.00 (the "Purchase Price"). Am. Compl. 14.  As a result, the Stock Purchase Agreement also provided that Glencoe would obtain Holdings' interest in several wholly-owned subsidiaries. *Id.* at 17.  Specifically, pursuant to the Stock Purchase Agreement, Glencoe purchased Holdings' 100% interest in HomeWise Management Company ("HMC"), and HMC's 100% interest in both HomeWise Insurance Company ("HWIC") and HomeWise Preferred Insurance Company ("HPIC"). *Id.* at 12.

On June 2, 2011, Glencoe paid HBK the Purchase Price (the "Transfer") pursuant to the Stock Purchase Agreement. *Id.* at 15. In exchange for the Transfer, HBK conveyed to Glencoe the securities of Holdings, HMC, HWIC and HPIC. *Id.* at 15-16.  At that time, HWIC allegedly merged into one of Glencoe's existing subsidiaries, First Home Insurance Company. *Id.* at 18. The Trustee alleges that First Home Insurance Company was deemed the surviving entity and, following the merger, it changed its name to HWIC. *Id.* HWIC continued to operate its insurance business writing homeowners policies in the State of Florida following the merger. *Id.* at 21. However, the Trustee alleges that HPIC had discontinued its operations as an active insurance company prior to Glencoe acquiring it and was in a "run-off" at the time of the Transfer. *Id.* at 19-20.

On June 30, 2011, nearly four (4) weeks after the Transfer, and while HPIC was under Glencoe's control, the Trustee alleges that the level of surplus required to be maintained by HPIC fell below the required minimum level. *Id.* at 24. As a result, the Trustee alleges that on August 15, 2011, Glencoe informed the Florida Office of Insurance Regulators, and HPIC was ordered into receivership on September 2, 2011 by the Second Judicial Circuit Court in Leon County, Florida. *Id.*

According to the Trustee, on August 15, 2011, Demotech, a third-party company that provides financial stability ratings, "pulled the rating for HWIC." *Id.* 25. As a result, the Trustee claims that "HWIC was no longer able to write insurance policies." *Id.* 26. On November 18, 2011, HWIC was ordered into receivership by the Second Judicial Circuit Court in Leon County, Florida. *Id.* at 28.

Based on these allegations, the Trustee seeks to avoid the Transfer -- Glencoe's $500,000 purchase of Holdings, HMC, HWIC and HPIC -- to HBK as a fraudulent transfer. The Trustee alleges two counts against HBK. In Count One, the Trustee seeks to avoid and recover the Transfer as a constructive and actual fraudulent transfer pursuant to Bankruptcy Code § 548 and Del. Code Ann. Tit. 6, §§ 1304(a)(1) and 1307(a)(1). In Count Two, the Trustee incorporates the prior allegations and states that he may "recover the Transfer from any 'immediate or mediate transferee' of HBK." *Id.* at 41.

## ANALYSIS

### A.    The Trustee Properly Served HBK

Rule 7004(b)(3) states that service may be made by first class mail postage prepaid "upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent.." Fed. R. Bankr. P. 7004(b)(3). HBK has stated that it has a principal business office at 2101 Cedar Springs Road, Suite 700, Dallas, Texas 75201. The Trustee mailed the Summons and the Amended Complaint to that address. The Summons and Amended Complaint were sent to the attention of HBK's "Officer Managing Agent or General Agent" at that address. Accordingly, the Trustee has complied with the service requirements of Rule 7004(b)(3). The Trustee's decision to mail the Summons and Complaint to the exact place that HBK claims it maintains its principal place of business is good and sufficient service. The Trustee is not required to serve HBK by the Hague Convention.

### B.    The Legal Standards of Rule 12(b)(6)

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court revisited the standards applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for the failure to state a claim, and the requirement of Fed R. Civ. P. 8 that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief...." In its analysis, the Supreme Court explained that while a complaint must provide the grounds for the relief sought, the Complaint need not provide detailed factual allegations. *See*

4

*Twombly*, 127 S.Ct. at 1964; *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Courts are required to "'accept all factual allegations as true, [and to] construe the complaint in a light most favorable to the plaintiff....'" *Id.* at 223 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) and citing *Twombly*, 127 S.Ct. at 1969 n.8)). Courts are also required to draw all "reasonable inferences in favor of the plaintiff." *Phillips*, 515 F.3d at 231; *see Charan Trading Corp. v. Uni-Marts, LLC* (*In re UniMarts LLC*), 339 B.R. at 409-410, (Bankr. D. Del. 2009).

The issue is not whether the plaintiff will ultimately succeed on the merits of the Amended Complaint, but whether the plaintiff is entitled to offer evidence to support those claims. *See Miller v. McCown De Leeuw & Co.* (*In re Brown Schools*), 386 B.R. 37, 44 (Bankr. D. Del. 2008) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). With regard to constructive fraudulent transfer claims, "'[a]ll that is needed at [the pleading] stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent.'" *Mervyn's, LLC v. Lubert- Adler Group IV, LLC* (*In re Mervyn's Holdings, LLC*), 426 B.R. 488, 498 (Bankr. D. Del. 2010) (quoting *Buckley v. Merrill Lynch & Co. Inc.* (*In re DVI, Inc.*), 2008 Bankr. LEXIS 2338, 2008 WL 4239120 at *9 (Bankr. D. Del. Sept. 16, 2008)). Constructive fraudulent transfer claims are not evaluated at the 12(b)(6) stage under heightened pleading standard of Fed. R. Civ. P. 9(b). Instead, "[c]omplaints alleging constructive fraudulent transfers need only set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him. All that is needed at this stage is an allegation that there was a transfer for less than reasonably

equivalent value at a time when the [d]ebtors were insolvent." *Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 567 at n. 131 (Bankr. D. Del. 2012) (citing *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 38 (Bankr. D. Del. 2011)). The Supreme Court did not engraft heightened pleading standards on the requirement in Fed. R. Civ. P. 8 that a plaintiff provide "a short and plain statement" that provides a defendant with fair notice of the relief sought and the grounds therefor. *See Phillips*, 515 F.3d at 233-234:

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up as: "stating...a claim requires a complaint with enough factual matter (taken it is true) to suggest" the required element. *Id.* This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.*

## C.    The Amended Complaint Suffices Under Rule 12(b)(6)

None of HBK's grounds for dismissing the Complaint are valid.

### 1.    Receipt of less than reasonably equivalent value is properly alleged.

The Amended Complaint contains specific factual allegations to show that Glencoe did not receive reasonably equivalent value when it paid HBK $500,000 for its interests in HMC, HPIC and HWIC.  The Third Circuit requires the application of a "totality of the circumstances" test, in determining whether reasonably equivalent value was exchanged for a transfer. The tests include consideration of factors such as market value, good faith, and whether the transaction was at arm's length. *See In re R.M.L., Inc.*, 92 F.3d 139, 153 (3d

Cir. 1996). Given the wide number of variables to consider, and the less stringent pleading requirements of Fed. R. Civ. P. 8 to constructive fraud claims, "[t]he issue of 'reasonably equivalent value' requires a factual determination that cannot be made on a motion to dismiss." *EPLG I, LLC v. Citibank, N.A.* (*In re Qimonda Richmond, LLC*, 467 B.R. 318, 327 (Bankr. D. Del. 2012); *see also Charys Liquidating Trust v. McMahan Sec. Co., L.P.* (*In re Charys Holding Co.*), 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("reasonably equivalent value is a fact intensive determination that typically requires testing through the discovery process."). *FTI Consulting, Inc. v. Sweeney* (*In re Centaur, LLC*), 2013 Bankr. LEXIS 3404 *11-12 (Aug. 19, 2013 Bankr. D. Del.).

The Amended Complaint contains ample proof that interests in HMC, HWIC and HPIC did not have a reasonably equivalent value to the $500,000 paid by Glencoe. The Amended Complaint shows that less than one month after the Transfer, HPIC and HWIC had a combined negative $2,000,000.00 for payment of insurance claims and had a combined value of "zero." Am. Compl. at 31- 32. As further detailed above, at the time of the Transfer, HPIC was no longer actively selling insurance, or receiving revenues of any significance, but was instead paying out claims from its insufficient or non-existing surplus. HWIC, while attempting operating, had a negative surplus. HWIC also lost its ability to draw new business when Glencoe, shortly after the Transfer, alerted the Florida regulators to the surplus deficiencies. Both companies quickly fell into   receivership.   The management company, HMC, had received advances against future revenues and did not have a viable income stream due to the run-down of HPIC and the loss of operations of

HWIC. Thus, this case is unlike *In re Global Link Telecom Corp.*, 327 B.R. 711 (Bankr. Del. 2005) where the complaint contained "no information" as to "the value of what was received." *Id.* at 718. Instead, the Amended Complaint quantifies the multi-million dollar surplus deficit of HWIC and HPIC along with of other facts and circumstances which readily support the contention that the HMC, HPIC and HWIC entities were not worth the reasonable equivalent of $500,000 paid for them by Glencoe.   The Amended Complaint goes so far as to value the combined interests of HWIC and HPIC at "zero." Am. Compl. at 32.

HBK also makes much of the fact that the Amended Complaint contains balance figures for HPIC and HWIC "as of June 30, 2011" rather than "as of June 2, 2011, the date of the Transfer." However, HBK goes far afield of a motion to dismiss by arguing (without support) that the values of HPIC and HWIC "may have fluctuated" between June 2 and June 30, or that perhaps there was a "co-mingling" that may have affected the valuations. HBK's arguments ask this Court to construe the allegations in the Amended Complaint in the light most favorable to the movant, and to draw inferences against the Trustee.  The proper approach under Rule 12(b)(6) is to recognize that there are numerous facts - including specific valuations of the assets shortly after their acquisition - that demonstrate the three entities were not worth $500,000 at the time of the Transfer, but were instead grossly underfunded insurance companies that were prohibited from operating as soon as Glencoe reported their deficits to the appropriate authorities.

2. **The Amended Complaint contains sufficient allegations regarding insolvency.**

The Amended Complaint shows that Glencoe acquired three entities that had extremely insufficient surpluses to cover potential claims for the insurance policies that they wrote. The Amended Complaint also shows that, at the time of the Transfer, HWIC "did not maintain sufficient reserves to satisfy the potential claims against its then existing insurance policies." After the Transfer, the underfunded HWIC was merged into Fist Home Insurance Company.    The Amended Complaint goes on to state that, as a result of the Transfer, Glencoe: (A) was insolvent or became insolvent as a result of the Transfer; and/or (B) was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was an unreasonably small capital; and/or (C) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured. Am. Compl. at 37.

"Insolvency is generally a factual determination not appropriate for resolution in a motion to dismiss." *Zazzali*, 445 B.R. at 349 (citations omitted); accord *FTI Consulting, Inc.*, 2013 Bankr. LEXIS 3404 at *12. Thus, the Trustee is not required to include precise calculations evidencing balance sheet insolvency. *See Zazzali*, 445 B.R. at 349.

The Trustee has provided sufficient allegations from which a reasonable person could infer that the totality of the Transfer and the acquisition of woefully underfunded entities caused Glencoe's insolvency, left Glencoe with unreasonably small capital, and that at the time of the Transfer, Glencoe believed that it would incur debts beyond its ability to pay.

3.    **The actual fraudulent transfer claim is valid on a motion to dismiss.**

In analyzing the applicable pleading standards and the intentional fraudulent transfer counts of the Complaint, the following additional legal standards apply.

"A bankruptcy trustee, as a third-party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud." *Miller*, 386 B.R. at 44; accord *Zazzali v. Mott* (*In re DBSI, Inc.*), 445 B.R. 344, 347-348 (Bankr. D. Del. 2011).

While Fed. R. Civ. P. 9(b) provides that the Trustee must plead fraud with particularity, the rule further acknowledges that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." As the Third Circuit has aptly explained:

> We approach this question mindful of our recent admonition that in applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983)(quoting 5C. Wright & A. Miller Federal Practice and Procedure § 1298, at 407 (1969)). We conclude that the district court subjected *Seville's* allegations of fraud to strict and scrutiny. Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct of which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

10

"Where a conveyance is made with actual intent to hinder, delay or defraud creditors, it is not necessary to show that the debtor was insolvent for the conveyance to be avoidable as fraudulent." *In re Vaniman Int'l, Inc.*, 22 B.R. 166, 185 (Bankr. E.D.N.Y. 1982). Likewise, any transfer made with actual intent to hinder, delay or defraud creditors "is avoidable whether or not the debtor received value in exchange, and the plaintiff need not allege and prove that the transfer was for less than fair value if actual intent is alleged and provided...." *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P.* (*In re Bayou Group, LLC*), 362 B.R. 624, 629-630 (Bankr. S.D.N.Y. 2007) (citations omitted).

"Because direct evidence of fraudulent intent is often unavailable, courts usually rely on circumstantial evidence to infer fraudulent intent." *Official Committee of Unsecured Creditors of Fedders North America, Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders North America, Inc.)*, 405 B.R. 527, 545 (Bankr. D. Del. 2009) (citations omitted). In doing so, courts look to common law and statutory badges of fraud. *Id.* (analyzing federal common law badges); *In re Mobileactive Media LLC*, 2013 Del. Ch LEXIS 26 at *108 (Del. Ch. Jan. 25, 2013) (analyzing Delaware Section 1304(b)). "It is not necessary that all of the factors support a finding of actual intent." *Dryden v. Estate of Gallucio*, 2007 Del. Ch. LEXIS 9 at *20 (Del. Ch. Jan. 11, 2007). "Instead, 'the confluence of several [factors] in one transaction generally provides conclusive evidence of an actual intent to defraud.'" *Id.* (quoting *VFB LLC v. Campbell Soup Co.*, 2005 U.S. Dist LEXIS 19999 at *109 (D. Del. Sept. 13, 2005)(quoting *Gilchinsky v. Nat'l Westminster Bank*, 159 N.J. 463, 732 A.2d 482, 490 (NJ 1999)); accord *In re Fedders North America, Inc.*, 405 B.R. at 545.

11

## CONCLUSION

For all of the foregoing reasons, the Motion is denied.  The Court is not addressing

HBK's Motion to Strike because it is not necessary to the decision.  The Court will issue an

Order.

Dated: June 16, 2015

_____
Kevin Gross, United States Bankruptcy Judge